IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA

v.

TIAN XUE,

              Defendant.

CRIMINAL ACTION
NO. 16-22-4

**OPINION**

**Slomsky, J.**                                                                                                      July 6, 2018

## I.    INTRODUCTION

On January 5, 2016, Defendant Tian Xue was arrested at her home in Charlotte, North Carolina.[1] After her arrest, she was interviewed by Special Agents Mark Aysta and Kathryn Swinkey of the Federal Bureau of Investigation ("FBI") at the FBI Field Office. Thereafter, a forty-five count Superseding Indictment was returned against the five Defendants, Yu Xue, Tao Li, Yan Mei, Tian Xue, and Lucy Xi. Defendant Tian Xue is charged with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349 (Count 1) and conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count 3). (Doc. No. 125.) The charges stem from an alleged conspiracy to steal confidential and trade secret information from GlaxoSmithKline, LLC ("GSK") for the use of a rival corporation, Renopharma, Ltd., created in China.

Before the Court is Defendant Tian Xue's Motion to Suppress statements she made to the FBI Agents after she was taken into custody. (Doc. No. 162.) The Government has filed a

---

[1] The United States Attorney had filed a Criminal Complaint against Defendants Yu Xue, Tao Li, Yan Mei, Tian Xue, and Lucy Xi. They were charged with conspiracy to commit wire fraud in violation of 18 U.S.C. § 1349. (Doc. No. 1.) Warrants for the arrest of Defendant Tian Xue and the other four persons were issued by a United States Magistrate Judge on December 29, 2015.

1

Response to her Motion to Suppress. (Doc. No. 169.) On April 30, 2018, the Court held a hearing on all pretrial Motions, including the instant Motion to Suppress. For reasons that follow, Tian Xue's Motion to Suppress (Doc. No. 162) will be denied.

## II.  FINDINGS OF FACT[2]

Tian Xue was born in China, has lived in the United States for over fifteen years, and resided in London, England before that. (See Doc. No. 169-1 at 2.) Although her primary language is Mandarin, the transcript and the video recording of her FBI interview reveal that she is able to speak and understand English. (See Doc. No. 186, Ex. A.) She has a master's degree and a PhD from universities in the United States and London, respectively, and from 2002 to 2010, worked at Virginia Bioinformatics Institute as a senior software developer. (Doc. No. 169-1 at 2-3.) At the time of the FBI interview, she was forty-five years old. (Doc. No. 186, Ex. A at 7.)

On January 5, 2016, FBI Special Agents Mark Aysta and Kathryn Swinkey arrested Tian Xue at her home in Charlotte, North Carolina and transported her to an interview room in the FBI Field Office. Agent Aysta asked Tian Xue whether she needed anything to eat or drink before they began. (Id. at 1.) He told her that he had spoken with her husband, that her husband was okay, and that her children were at school. (Id.) Agent Swinkey entered the interview room,

---

[2] At the April 30, 2018 hearing on the Motion to Suppress, the Government did not present witness testimony because a video recording was made by FBI Agents of their interview with Tian Xue. The Findings of Fact are taken from the transcript of the recording, the video recording of the January 5, 2016 FBI interrogation of Tian Xue (Doc. No. 186, Ex. A), and her curriculum vitae, filed as an Exhibit by the Government (Doc. No. 169-1).

The dialogue quoted throughout the Findings of Fact is based on watching and listening to the video recording of the interrogation carefully several times, as well as the transcript of the interrogation filed by the Government. Upon review of the video recording, the Court identified inaccuracies in the transcript. Accordingly, the Court has made alterations to the transcript, which appear in brackets in this Opinion, to accurately reflect the recorded conversation.

and both Agents introduced themselves. (Id. at 2.) Agent Aysta explained to Tian Xue that the reason the Agents came to her house that morning was because "there was an arrest warrant issued for" Tian Xue, as well as for her sister, co-Defendant Yu Xue. (Id.) Agent Aysta stated that the arrest warrant related to GSK and Renopharma and explained that they wanted to talk to her about her involvement with Renopharma and the allegations against her. (Id.)

Agent Aysta then explained that because she was under arrest, they would need to read Tian Xue her rights before they could speak with her. (Id.) The following exchange ensued:

> [Aysta]: But, because you're under arrest right now, um, before we can talk to you about those things, [we] we have to be able to—[or] we have to read you your rights and you have to understand what your rights are and those rights—we're gonna read them to you but, they essentially say you don't have to talk to us if you don't want to, um, it's totally your choice whether you want to speak to us or not about [this].
>
> [Xue]: Yea, sure.
>
> [Aysta]: Okay?
>
> [Xue]: Mm-hmm.
>
> [Aysta]: So, with that being said, we'll read you your rights, but, um, Kathryn will go through them right now with you.
>
> [Xue]: Yeah.

(Id. at 3.)

Agent Swinkey slid the FBI Advice of Rights Form across the table so that Tian Xue could view it and read the words on the form while Agent Swinkey read the Miranda warnings to her aloud. (Video Recording at 2:39.) While showing Tian Xue the Advice of Rights Form, Agent Swinkey explained the following:

> [Swinkey]: Okay, so [Tian]—
>
> [Xue]: Mm-hmm.

3

> [Swinkey]: This is our, um, form, so uh, as he explained, your rights to talk to us. It's basically—it says, [before], um, we ask you any questions, you must understand these following rights that I'm getting ready to read to you.
>
> [Xue]: Yeah.
>
> [Swinkey]: That you have the right to remain silent, that anything you say can be used against you in court. That you have the right to talk to a lawyer for advice before we ask you any questions. That you have the right to have a lawyer with you during questioning and if you cannot afford a lawyer then one will be appointed for you, um, before any questioning, if you wish. Also, if you decide to answer, um, questions now without a lawyer present, you have the right to stop answering at any time. Okay? Did you understand all those?
>
> [Xue]: Yeah.

(Doc. No. 186, Ex. A at 2-3.) Tian Xue nodded after Agent Swinkey read the warning that she had the right to talk to a lawyer for advice before the Agents asked her any questions and that she had the right to stop the questioning at any time. (Video Recording at 3:01; 3:21.)

Agent Swinkey then stated, "Alright, if you will just initial by all those for me and then sign right here, please ma'am." (Doc. No. 186, Ex. A at 3.) Tian Xue took the pen in her hand and looked down at the Advice of Rights Form, pausing for a moment. (Video Recording at 3:25-28.) Agent Swinkey stated, "You can start right here." (Doc. No. 186, Ex. A at 3.) Tian Xue said "[o]kay," placed her initials on each line of the Advice of Rights Form, and signed the form, waiving her Miranda rights. (Id.; Video Recording at 3:30-43.)

After signing the Advice of Rights Form, Tian Xue asked, "[How,] How can find a lawyer?" (Doc. No. 186, Ex. A at 3.) The following conversation resulted:

> [Aysta]: Sure. You can, um, you'll be allowed—[or] you can talk to a lawyer at any time, um, if you—at any point that you want to speak to a lawyer you can.
>
> [Xue]: O[h].
>
> [Aysta]: Um, what's going to happen is we're going to talk here—
>
> [Xue]: Okay.

[Aysta]: And then after that, you will go to the Federal courthouse and you'll have a hearing—

[Xue]: O[h].

[Aysta]: Where you're told what you're being charged with and then they will appoint you a lawyer or you can get a lawyer.

[Xue]: Oh, okay.

(Id. at 3-4.) Tian Xue attempted to explain: "Actually, I didn't know—I don't know nothing for this, uh, I—I quit my job like 2000, uh, 2010—" (Id. at 4.) Agent Aysta stopped her:

[Aysta]: Tian, if you don't mind, I really wanna make sure we get everything from you so—

[Xue]: Yeah.

[Aysta]: So, let me—let us do this real quickly.

[Xue]: Yeah.

[Aysta]: And then we're gonna get your whole side of your story.

[Xue]: Okay.

[Aysta]: But you want to speak to us, right?

[Xue]: Yeah.

[Aysta]: Okay, alright. And you have the right to have a lawyer here and you wanna speak to us just now?

[Xue]: Yeah.

(Id. at 4-5.) Agent Aysta said, "Okay, great." (Id. at 5.)

Tian Xue then consented to a search of her cellular phone and provided the Agents with the passcode to the phone. (Id. at 5-6.) Thereafter, the Agents proceeded to question Tian Xue about GSK, Renopharma, and the allegations against her. (Id. passim.) After questioning Tian Xue for an hour and forty-seven minutes, she asked, "So what—what's going to happen? I didn't know." (Id. at 91.) Agent Swinkey explained that she would appear in front of a judge for

5

an initial appearance and described the process that would follow. (Id. at 91-92.) When the interview concluded, Tian Xue was taken to the Federal courthouse for her initial appearance.

## III. STANDARD OF REVIEW

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In Miranda v. Arizona, the Supreme Court concluded that custodial interrogations contain "inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." 384 U.S. 436, 467 (1966). Given this, the prosecution must use certain "procedural safeguards effective to secure the privilege against self-incrimination." Id. at 444. Unless the Government demonstrates the use of such procedural safeguards, it "may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of the defendant." Id. As to the required procedural safeguards, the Supreme Court explained as follows:

> Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking there can be no questioning.

Id. at 444-45.

Where a defendant moves to suppress a statement on the basis that it was obtained in violation of the Miranda doctrine, the government bears the burden of proving by a preponderance of the evidence that defendant was properly advised of her Miranda rights, that she voluntarily, knowingly, and intelligently waived such rights, and that her statement was voluntary. Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).

## IV. ANALYSIS

Defendant Tian Xue moves to suppress any statements she made to the Agents after she was taken into custody. (Doc. No. 162 at 7.) First, she argues that after she was read her Miranda rights, her waiver of them was not voluntary, knowing, and intelligent. (Id.) Second, she contends that regardless of whether she initially waived her Miranda rights after they were read to her, she invoked her right to counsel when she asked, "[How,] How can find a lawyer?" (Id. at 12-13.) The Government argues that Tian Xue voluntarily, knowingly, and intelligently waived her Miranda rights. (Doc. No. 169 at 7.) It further submits that her question, "[How,] How can find a lawyer?" was not an invocation of her right to counsel but instead was merely a logistical question about how she could find a lawyer. (Id. at 9-10.)

It is undisputed that Tian Xue was in custody for the purposes of Miranda and the Fifth Amendment when she was arrested and questioned and that she was read proper Miranda warnings before questioning. Thus, the Court only will discuss whether she voluntarily, knowingly, and intelligently waived her Miranda rights after they were read to her and whether her subsequent inquiry regarding finding an attorney was an invocation of her right to counsel.

### A. Tian Xue's Waiver Was Voluntary, Knowing, and Intelligent

A proper waiver occurs when it is "made voluntarily, knowingly and intelligently" under "the totality of the circumstances." United States v. Velasquez, 885 F.2d 1076, 1086 (3d Cir. 1989) (quoting Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983) (plurality opinion)). The "totality of the circumstances" includes "the facts of the particular case, including the background, experience, and conduct of the suspect." Id. (quoting Bradshaw, 462 U.S. at 1046). The inquiry is twofold. Id. at 1084. In United States v. Velasquez, the Third Circuit explained:

> First, the waiver must have been voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception." Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 1141, 89 L. Ed. 2d 410

(1986) (citing Fare v. Michael C., 442 U.S. 707, 725, 99 S. Ct. 2560, 2572, 61 L. Ed. 2d 197 (1979)). Second, the waiver "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id.

Id. "Miranda rights will be deemed waived only where the totality of the circumstances "reveal[s] both an uncoerced choice and the requisite level of comprehension." United States v. Sriyuth, 98 F.3d 739, 749 (3d Cir. 1996) (quoting Alston v. Redman, 34 F.3d 1237, 1253 (3d Cir. 1994))). Under this framework, the Court will discuss whether Tian Xue's waiver was voluntary, knowing, and intelligent.

### 1. Tian Xue's Waiver Was Voluntary

In her Motion to Suppress, Tian Xue does not devote considerable attention to the argument that her waiver was not voluntary but instead focuses on her contention that her waiver was not knowing and intelligent. Despite the lack of focus on the voluntariness prong, a review of the evidence of record reveals that Tian Xue's waiver was voluntary. A waiver of Miranda rights is voluntary when it is "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Berghuis v. Thompkins, 560 U.S. 370, 382 (2010) (quoting Moran, 475 U.S. at 421).

Here, Tian Xue's waiver of her Miranda rights was voluntary, since it was based on her free and deliberate choice rather than on any intimidation, coercion, or deception on the part of the Agents. See id. After bringing her into the interview room, Agent Aysta asked Tian Xue whether she needed anything to eat or drink. (Doc. No. 186, Ex. A at 1.) Agent Aysta told her that he had spoken with her husband and assured her that he was okay and that her children were at school. (Id.) The Agents explained to her that she was under arrest and described the charges against her. (Id. at 2.)

Agent Swinkey read Tian Xue her Miranda warnings while simultaneously showing her the Advice of Rights Form so that she could read them in writing as Agent Swinkey read. Agent Swinkey asked her if she understood them, and Tian Xue stated that she did. (Id. at 3.) She was asked to initial and sign the form, and she agreed, stating "[o]kay." (Id.) At no point did the Agents intimidate, coerce, or deceive her into waiving her rights. See Sriyuth, 98 F.3d 748-50 (holding that naturalized United States citizen from Thailand who, though not his native language, spoke English, "waived his rights freely and deliberately, and was not coerced into relinquishing them" where he signed the waiver form and the agent did not make any promises to him). Accordingly, Tian Xue's waiver of her Miranda rights was voluntary since it was "the product of a free and deliberate choice rather than intimidation, coercion, or deception." Berghuis, 560 U.S. at 382 (quoting Moran, 475 U.S. at 421).

### 2. Tian Xue's Waiver Was Knowing and Intelligent

Tian Xue contends that her limited comprehension of the English language and her unfamiliarity with the American criminal justice system prevented her waiver from being knowing and intelligent. (Doc. No. 162 at 7-8.) The Government argues that the length of time she has lived in the United States, her education level, and her proficiency speaking and understanding English show that her waiver was knowing and intelligent under the totality of the circumstances. (Doc. No. 169 at 8.)

A waiver of Miranda rights is knowing and intelligent when "made with a full awareness of the nature of the right being abandoned and the consequences of the decision to abandon it." Velasquez, 885 F.2d at 1084 (quoting Moran, 475 U.S. at 421). In United States v. Sriyuth, the Third Circuit affirmed the district court's denial of a defendant's motion to suppress, reasoning that defendant, who was born in Thailand but had lived in the United States for nine years, waived his Miranda rights with an understanding "of the right being abandoned and the

consequences of such abandonment." 98 F.3d at 750. Defendant was twenty-three years old, had attended five years of high school in the United States, and had been working in restaurants and in construction. Id. He was not familiar with the criminal justice system but did know that he was entitled to a lawyer from watching movies and from the television show, "The People's Court." Id. The agent testified that defendant understood him when he was explaining his rights. Id. at 749. He further testified that he did not have difficulty understanding defendant, who spoke English, although it was not his native language. Id.

In Sriyuth, defendant was read his Miranda rights and the rights were explained to him before he was questioned. Id. Defendant told the agent that he did not want to have an attorney present, stated that he wanted to tell his side of the story, and waived his Miranda rights. Id. Based on the totality of the circumstances, the Third Circuit held that he had waived his Miranda rights knowingly and intelligently. Id. at 750.

Here, Tian Xue's "background, experience, and conduct" demonstrate that her waiver was knowing and intelligent. Tian Xue was forty-five years old at the time of the FBI interview. (Doc. No. 186, Ex. A at 7.) Although she was born in China, she has lived in the United States for over fifteen years and lived in London, England before that. (See Doc. No. 169-1 at 2.) A review of the transcript and the video recording of her FBI interview reveal that she is able to speak and understand English, even though it is not her primary language. (See Doc. No. 186, Ex. A.) She has advanced degrees from universities in the United States and London, England and for approximately eight years, she worked in the United States as a senior software developer. (Doc. No. 169-1 at 2-3.)

Furthermore, the Agents explained to her that she was under arrest and described what the arrest related to. (Doc. No. 186, Ex. A at 2.) Tian Xue was properly read her Miranda rights

10

and was given the Advice of Rights Form to follow along as Agent Swinkey read. (Video Recording at 2:39.) After Agent Swinkey finished reading the Miranda warnings, she asked Tian Xue whether she understood them. (Doc. No. 186, Ex. A at 3.) Tian Xue said that she did. (Id.) She placed her initials by each line on the form, signed the form, and waived her rights. (Id.)

Tian Xue relies on United States v. Monreal, 602 F. Supp. 2d 719 (E.D. Va. 2008), and United States v. Barry, 979 F. Supp. 2d 715 (M.D. La. 2013), in arguing that her lack of comprehension of English rendered her Miranda waiver invalid. (Doc. No. 162 at 9.) In Monreal, the court held that defendant's waiver was not knowing and intelligent, reasoning that he had no understanding of English and had not spent a significant amount of time in the United States. 602 F. Supp. 2d at 723. Further, the testimony of the agents was not credible, defendant's statement given in Spanish was not accurately transcribed, and the interrogation was not recorded. Id. at 723-24. Based on those circumstances, the court suppressed defendant's statement. Id. at 724.

Similarly, in Barry, the court held that defendant was not fully aware of the nature and consequences of the decision to waive his rights and therefore his waiver was not valid. 979 F. Supp. 2d at 718-19. Defendant was a native speaker of Fulani[3] with a limited knowledge of French, who had lived in the United States for ten years. Id. at 717. He was read his rights and given an advice of rights form in French. Id. at 719. The Court reasoned that the agent did not inquire whether defendant could read or whether he understood his rights. Id. Accordingly, the court concluded that he did not knowingly and intelligently waive his Miranda rights. Id.

The totality of circumstances in this case is unlike those in Monreal or Barry. Tian Xue's age, extensive education, and length of time spent in the United States all support a level of

---

[3] Fulani is a West African dialect. Barry, 979 F. Supp. 2d at 717.

competency that far outshines that of defendants in Monreal and Barry, and even that of defendant in Sriyuth, who had lived in the United States for nine years and had only a high school education. Unlike in Monreal, Tian Xue's interview was recorded by video and was transcribed, so there is no question of how it proceeded. Finally, Tian Xue was properly read her Miranda rights and was shown the Advice of Rights Form while they were read. As Agent Swinkey read the Miranda warnings, Tian Xue nodded indicating that she understood after the warning that she had the right to talk to a lawyer for advice before the Agents asked her any questions and that she had the right to stop the questioning at any time. (Video Recording at 3:01; 3:21.) After she finished reading, Agent Swinkey asked Tian Xue if she understood all of her rights, and Tian Xue said, "Yeah." (Doc. No. 186, Ex. A at 3.) Thus, the totality of the circumstances shows that Tian Xue waived her Miranda rights with the "requisite level of comprehension," and her waiver was knowing and intelligent. See Sriyuth, 98 F.3d at 749.

### B. Tian Xue Did Not Invoke Her Miranda Right to Counsel

Next, Tian Xue argues that even if she validly waived her Miranda rights when she signed the Advice of Rights Form, her statement should be suppressed because she subsequently invoked her right to counsel by asking, "[How,] How can find a lawyer?" (Doc. No. 162 at 12.) The Government responds that Tian Xue's question was not an unequivocal invocation of her right to counsel but was merely a logistical question about how she could find a lawyer. (Doc. No. 169 at 10.)

To invoke the right to counsel, a defendant must unambiguously request the assistance of counsel. Davis v. United States, 512 U.S. 452, 459 (1994). Determining whether a defendant actually invoked her right to counsel is "an objective inquiry." Id. at 458-59 (citing Connecticut v. Barrett, 479 U.S. 523, 529 (1987)). In Davis v. United States, the Supreme Court explained:

> Invocation of the Miranda right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." McNeil v. Wisconsin, 501 U.S., at 178, 111 S. Ct., at 2209. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect *might* be invoking the right to counsel, our precedents do not require the cessation of questioning.

Id. at 459 (emphasis in original). Thus, to invoke the right to counsel, a defendant must unambiguously request the assistance of counsel by "articulat[ing] h[er] desire to have counsel present sufficiently clearly that a reasonable officer in the circumstances would understand the statement to be a request for an attorney." Id. But if the statement does not meet the requisite level of clarity, the officers are not required to stop questioning the defendant. Id.

In Davis, the Court held that the statement "Maybe I should talk to a lawyer," was not a request for counsel. Id. at 462; see also United States v. Havlik, 710 F.3d 818, 822 (8th Cir. 2013) (holding that statement "I guess you better get me a lawyer then" was not an unambiguous request for counsel); Burket v. Angelone, 208 F.3d 172, 197-98 (4th Cir. 2000) (holding that statement "I think I need a lawyer" was not an unequivocal request for counsel); United States v. Zamora, 222 F.3d 756, 766 (10th Cir. 2000) (holding that statement "I might want to talk to an attorney" was not an unequivocal request for counsel).

Courts have consistently held that a defendant's inquiry about whether and how to obtain an attorney does not constitute an unambiguous request for the assistance of counsel. See, e.g., Soffer v. Cockrell, 300 F.3d 588, 595 (5th Cir. 2002) (holding that defendant's question of how he could get a lawyer was not an unambiguous assertion of his right to counsel); United States v. Posado-Rios, 158 F.3d 832, 867 (5th Cir. 1998) (concluding that defendant's statement that she "might have to get a lawyer then, huh?" was not a sufficient invocation of her right to counsel); Diaz v. Senkowski, 76 F.3d 61, 63-65 (2d Cir. 1996) (concluding that defendant's statements, "I think I want a lawyer" and "Do you think I need a lawyer?" was not reasonably clear to invoke

his right to counsel); Lord v. Duckworth, 29 F.3d 1216, 1220-21 (7th Cir. 1994) (holding that statement, "I can't afford a lawyer but is there anyway I can get one?" was not sufficiently clear to be unequivocal).

In the instant case, Tian Xue's question, "[How,] How can find a lawyer?" objectively was not an unambiguous request for the assistance of counsel. See Davis, 512 U.S. at 459. It was not a statement that "could reasonably be construed" as "an expression of a desire for the assistance of an attorney." See id. (quoting McNeil, 501 U.S. at 178). Instead, it was, at best, an ambiguous reference to counsel that did not meet the requisite level of clarity. Under these circumstances, the Agents were not required to cease questioning Tian Xue but were free to continue. See id.

Nonetheless, Agent Aysta told Tian Xue that she could talk to a lawyer at any time. (Doc. No. 186, Ex. A at 3-4.) He stated that they would talk and that she could get counsel at the Federal Courthouse. (Id.) Tian Xue attempted to offer information to the Agents about the case, but Agent Aysta stopped her, confirming, "But you want to speak to us, right?" (Id. at 4-5.) Tian Xue answered, "Yeah." (Id.) Agent Aysta responded, "Okay, alright. And you have the right to have a lawyer here and you wanna speak to us just now?" (Id.) "Yeah," said Tian Xue. (Id.)

Agent Aysta was not required to clarify, given that Tian Xue's question was not an unequivocal request for counsel. See Davis, 512 U.S. at 461 (noting that "when a suspect makes an ambiguous or equivocal statement it will often be good police practice for the interviewing officers to clarify whether or not he actually wants an attorney" but declining "to adopt a rule requiring officers to ask clarifying questions"). But he did so anyway, and she confirmed that she was willing to speak to him. Because Tian Xue did not invoke her right to counsel but instead voluntarily spoke with the Agents, her statement will not be suppressed.

## V. CONCLUSION

For the foregoing reasons, Defendant Tian Xue's Motion to Suppress (Doc. No. 162) will be denied. An appropriate Order follows.