**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**UNITED STATES OF AMERICA,**

**v.**

**TIAN XUE,**

**Defendant.**

**Case No: 16-cr-00022-JHS-4**

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

On October 22, 2018, Tian Xue pled guilty to one count of conspiracy to commit money laundering. Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). Under the plea agreement, the parties have agreed, under Fed. R. Crim. P. 11(c)(1)(C), to the following sentence: 5 years' probation,[1] a fine in the discretion of the Court, and a $100 special assessment. *See* ECF No. 247, Plea Agreement. As the Court knows, under Rule 11(c)(1)(C), this recommendation is binding on the Court once the Court accepts the plea agreement. Both parties ask the Court to accept the agreement as the appropriate disposition of Ms. Xue's criminal case in light of the factors set forth in 18 U.S.C. § 3553(a) as well as the mitigating circumstances of Ms. Xue's very limited involvement in this matter. For the reasons set forth below, Ms. Xue respectfully requests that the Court accept the plea agreement and impose the corresponding five-year probationary sentence.

---

[1] The government has agreed that under this agreement, Ms. Xue is not precluded from seeking early termination of probation without violating the terms of the plea agreement.

## I. Introduction

Ms. Xue is a devoted mother of her two children, Olivia, aged 15 years and Anthony, aged 12 years, and a dedicated wife to her husband, Jian Yang, of over twenty years. The offense that brings her before this Court stands in stark contrast to an otherwise upstanding, selfless, and accomplished life. Since her arraignment in 2016, she has complied with every condition of her release and, despite the ongoing uncertainty of her criminal case, has remained a dependable and caring mother and wife.

Ms. Xue's desire to get back in the workforce ultimately led to her involvement in this case. After leaving her job in 2011 to raise her two children, while her husband maintained his full-time employment, Ms. Xue hoped to find part-time employment in North Carolina. Despite her efforts, Ms. Xue received no job offers aside from a potential employment opportunity presented to her by her twin sister, Yu Xue. Ultimately, Ms. Xue agreed to hold certain of her sister's ***potential*** revenue from Renopharma in her name and also agreed to set up a computer database for her sister's company. Neither of these events ever occurred. Ms. Xue never put any money from Renopharma in her name nor did she ever establish a computer database for the company. The nature of Ms. Xue's conduct in the Government's alleged conspiracy was extremely limited and can best be described as minimal. Nonetheless, Ms. Xue has accepted complete responsibility for her conduct as it related to the alleged conspiracy.

It is extremely important to emphasize that Ms. Xue never had access to any of the GSK information that the Government alleges constituted trade secrets. Moreover, as we pointed out earlier, Ms. Xue received absolutely no benefit as a result of her conduct in this case. In fact, the government proffered in its memorandum that Ms. Xue is the least culpable of the persons it alleges were involved in this conspiracy. Accordingly, the unique facts and circumstances of Ms.

Xue's conduct in this case, combined with her background and personal characteristics, provide compelling support for the probationary sentence agreed to and proposed to the Court by the government and Ms. Xue.

## II. Calculating the Sentencing Guidelines

The first step in the current federal sentencing process requires the Court to calculate the applicable advisory guidelines range. The parties do not dispute that Ms. Xue's base offense level is 8. Rather, Ms. Xue disagrees with the "loss amount" proposed by the Government and presentence report in her case. The Government submits that the intended loss amount for Ms. Xue is $73,600,000. Ms. Xue disagrees and submits that the loss amount is zero. As the Court is well aware, the loss amount calculation is an issue that is being vigorously contested by Ms. Xue's codefendants, Yu Xue and Tao Li. Indeed, the Court recently held an evidentiary hearing lasting several days with respect to this issue. *See* April 30, 2019 – May 2, 2019 Loss Hearing, ECF No. 274-276. Ms. Xue was not a party to those hearings and the Court has not yet rendered a decision on the loss amount in this case. We recognize that the Court's ultimate decision on loss amount with respect to Defendants Yu Xue and Tao Li could impact its decision on the loss amount calculation with respect to Tian Xue, but given the nature of the agreement being proposed to the Court under Rule 11(c)(1)(C), we submit there is no reason to postpone Tian Xue's sentencing until that decision is made.

The valuation of loss "need not be made 'with precision,' [but] . . . the district court must not speculate concerning the existence of a fact which would permit a more severe sentence under the guidelines." *United States v. Dominguez*, 109 F.3d 675, 676 (11th Cir. 1997); *see also United States v. Hilgers*, 560 F.3d 944 (9th Cir. 2009) (granting the defendant's objection to the loss calculation by the probation officer on the basis that it was too speculative). We submit that the

loss amount advanced by the government's expert, Dana Trexler, vastly overstates the actual loss that would apply to Ms. Xue's conduct. Ms. Trexler opined that:

> Renopharma's own estimate of its minimum transaction value—either through collaboration, licensing, or acquisition—as a result of Yu Xue's theft and misappropriation of GSK's trade secrets was $200,000,000. Therefore, the value of the reasonably foreseeable funds that the defendant agreed to launder equals at least $73,600,000 (36.8% of $200,000,000).

PSR ¶ 37. Ms. Trexler's reasoning is unsubstantiated and speculative. Furthermore, the intended loss is irrelevant to Ms. Xue and the plea agreement. There is no evidentiary basis to conclude, with sufficient certainty, that Ms. Xue may have reasonably foreseen Ms. Trexler's conjecture on the loss amount as the fruits of the alleged fraudulent scheme carried out by others. *See* U.S.S.G. § 2B1.1 comment 3(A)(ii) (defining intended loss as "the pecuniary harm that the defendant purposely sought to inflict").

To the extent the Court believes it is necessary to make a finding as to loss in Tian Xue's case, we submit that the Court should use the actual loss amount in Ms. Xue's case, which we believe is zero. Under §2B1.1, actual loss is defined as "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1 comment 3(A)(i). Based on the facts and circumstances in Ms. Xue's case, Ms. Xue was, at best, peripherally involved in the conspiracy. She had no insight into Renopharma's activities or the amount of money that Renopharma may have envisioned it would generate from business activity that never occurred. It is undisputed that Renopharma never actually conducted real business operations and, as a result, no revenues were ever generated. Thus, the most reasonable calculation of the loss applicable in Ms. Xue's case is zero.

Alternatively, when the loss amount is "exceedingly difficult to calculate," as it is here, courts have relied instead on a defendant's net profits, or "gain" from their offenses. *See* U.S.S.G.

§ 2B1.1 comment 3(B) (explaining that "[t]he court shall use the gain that resulted from the offense as an alternative measure of loss only if there is a loss but it reasonably cannot be determined"); *see also United States v. Nagle*, 644 Fed. Appx. 212, 216-17 (3d Cir. 2016). Even under this alternative calculation, the amount of loss should be zero. Ms. Xue did not "gain" anything from her offense conduct nor did she ever actually launder a single dollar.

A loss (or gain) of zero results in a base offense level of 8. With a base offense level of 8 and the decrease of five levels for the offense of conspiracy (three levels) and acceptance of responsibility (two levels), Ms. Xue's total offense level is 3. An offense level of 3 in criminal history category of I places Ms. Xue in the advisory guidelines range of 0-6 months. This range is not only consistent with the most reasonable determination of loss as it relates to Ms. Xue, but it is also consistent with the imposition of the probationary sentence the parties stipulated to in Ms. Xue's Rule 11(c)(1)(C) plea agreement.

### III. The Other § 3553 Factors Support the Agreed-Upon Probationary Sentence

Section 3553 requires a sentencing court to impose a sentence that is "sufficient, but not greater than necessary" to comply with four purposes of federal sentencing. 18 U.S.C. § 3553(a). Those four purposes are the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; (2) to afford adequate deterrence to criminal conduct; (3) to protect the public from further crimes of the defendant; and (4) to provide the defendant with needed training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(2). In addition, § 3553 requires district courts to consider the following factors (in addition to the advisory Guidelines range and any pertinent policy statements issued by the Sentencing Commission) in imposing a sentence: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds

of sentences available; (3) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (4) the need to provide restitution to any victim(s). *See* 18 U.S.C. § 3553(a)(1)-(7). For the reasons that follow, Ms. Xue submits that the factors described below support the proposed plea agreement.

A. The Nature and Circumstances of the Offense

As described above, it was Ms. Xue's desire to get back into the workforce on a part-time basis that led to her involvement with Renopharma. When Ms. Xue left her job at Virginia Bioinformatics Institute in 2011 after commuting back and forth from Blacksburg, Virginia to Charlotte, North Carolina for many years, she began to search for part-time employment that would allow her to be the full-time caretaker to her two young children. Despite Ms. Xue's various attempts to find work, she received no offers.

During this time, Ms. Xue's twin sister, Yu Xue, suggested that she assist with Renopharma, a company Yu Xue indicated that she was starting. Both Ms. Xue and her sister had numerous "googlechat" conversations about the company and Ms. Xue agreed to help to a limited extent, which is the basis of her offense and guilty plea. Specifically, Ms. Xue, who has some background and experience in information technology, agreed to set up a computer database for the company. She also agreed that she would keep in her name certain revenues her sister obtained as a result of Renopharma's operations. None of these agreements ever materialized and Ms. Xue, aside from a nascent agreement to assist her sister, never set up a computer database nor did she ever receive any money in connection with Renopharma.

B. The History and Characteristics of Ms. Xue

The history and characteristics of Tian Xue also support a probationary sentence. The PSR provides great detail regarding Ms. Xue's personal and family history, so we will not repeat all of it here but rather highlight some important characteristics.

Ms. Xue was born and raised in China. In 1999, she moved to the United States to be with her husband, Jian Yang. Ms. Xue and Mr. Yang have been married for over twenty years. They have raised a family together in North Carolina where they have resided (with the exception of Ms. Xue's temporary work in Blacksburg, VA) since 1999. Together, Mr. Yang and Ms. Xue have two children, Olivia, aged 15 and Anthony, aged 12. Both of their children are extremely talented and have matured into accomplished young adults. This is a reflection of the care and attention both Ms. Xue and Mr. Yang have devoted to their children.

Mr. Yang has worked at Wells Fargo bank since 2006 and is currently the sole provider for the family. In the Fall of 2018, Mr. Yang was unexpectedly diagnosed with Deep Vein Thrombosis ("DVT"), a life-threatening blood clot condition, after being admitted to the Emergency Room. He currently takes a blood thinner medication for ongoing treatment and is hopeful that the condition will remain stabilized. Since 2011, Ms. Xue has worked as a stay-at-home mother. In sum, Ms. Xue committed herself to being a full-time caretaker for her children and aside from the conduct that has brought her before this Court, Ms. Xue has lived an otherwise exemplary, hard-working and law-abiding life.

C. The Proposed Sentence Satisfies the Directives Set Forth in 18 U.S.C. § 3553

The fact that Ms. Xue has remained on pretrial release since 2016 in perfect compliance with the conditions of her release provides the Court with compelling evidence that Ms. Xue is an

ideal candidate for a probationary sentence. Ms. Xue has never before violated the law and the position she currently finds herself in is contrary to her character and her conduct for her entire life. Thus, a probationary sentence, as proposed to the Court by both parties satisfies the factors set forth in 18 U.S.C. § 3553.[2] Such a sentence provides respect for the law while imposing just punishment. There is no need for specific deterrence for Ms. Xue, given her impeccable record on pretrial release throughout the past three years and her lack of any criminal record. As the government points out in their memorandum, a sentence of probation is reflective of Ms. Xue's extremely minimal role in the broader conspiracy.

**IV. Conclusion**

The proposed plea agreement is "sufficient, but not greater than necessary" to adequately address Ms. Xue's offense. When considering Ms. Xue's history and characteristics, coupled with the nature and circumstances of the offense, as well as the other §3553 factors the Court must consider, a probationary sentence is warranted.

WHEREFORE, based on the foregoing reasons and any others that may appear to the Court, Ms. Xue respectfully requests that the Court accept the parties' proposed Fed. R. Crim. P. 11(c)(1)(C) plea and impose a sentence of five years' probation as it is sufficient, but not greater than necessary, to comply with the purposes of federal sentencing set forth in 18 U.S.C. § 3553(a).

---

[2] The need to provide training and treatment to Ms. Xue is not applicable.

Dated: June 3, 2019

Respectfully submitted,

_/s/__David Schertler____________

David Schertler (admitted *pro hac vice*)
Stuart Sears (admitted *pro hac vice*)
Megan Petry (admitted *pro hac vice*)
Schertler & Onorato, LLP
901 New York Ave., NW
Suite 500 West
Washington, D.C. 20001
Phone: (202) 628-4199

*Attorneys for Tian Xue*

**CERTIFICATE OF SERVICE**

I certify on the date set forth below, a true and correct copy of the foregoing Motion was transmitted to the Court's CM/ECF system for electronic service upon the following:

Robert Livermore
Assistant United States Attorney
U.S. Attorney's Office
615 Chestnut Street, Suite 1250
Philadelphia, PA 19106
*Robert.J.Livermore@usdoj.gov*

Date: June 3, 2019

_/s/__David Schertler____________